| | |
|---|---|
| RAYMOND HERNDON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 12-0206-CV-W-DW-P |
| ) | |
| JEFF NORMAN, ) | |
| ) | |
| Respondent. | |

**OPINION AND ORDER DENYING WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY**

Petitioner, a convicted state prisoner currently confined at the Jefferson City Correctional Center in Jefferson City, Missouri, has filed pro se a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2005 convictions and sentences for five counts of first-degree child molestation, two counts of first-degree sexual misconduct, four counts of first-degree statutory sodomy, two counts of second-degree statutory sodomy, and one count of second-degree statutory rape, which were entered in the Circuit Court of Jackson County, Missouri. Petitioner's conviction was affirmed in part and reversed and remanded in part on direct appeal ((State v. Herndon, 224 S.W.3d 97 (Mo. App. 2007); (Respondent's Exhibit G)), and the denial of his motion for post-conviction relief filed pursuant to Mo. Sup. Ct. R. 29.15 was upheld on appeal thereof (Respondent's Exhibit M). Petitioner raises three (3) grounds for relief. Respondent contends that all three grounds are without merit.

**FACTUAL BACKGROUND**

In affirming the motion court's denial of petitioner's 29.15 motion, the Missouri Court of Appeals, Western District, set forth the following facts:

> Herndon was charged by indictment in the Circuit Court of Jackson County with six counts of first-degree child molestation, two counts of first-degree sexual misconduct, five counts of statutory sodomy in the first degree, one count of second-degree statutory rape, and one count of second-degree statutory sodomy. An information in lieu of indictment was subsequently filed, reducing one of the counts of statutory sodomy from first to second degree. Immediately prior to trial, one count of child molestation was dismissed.
>
> Trial began on June 6, 2005. The jury found Herndon guilty on all counts submitted to it. Herndon waived jury sentencing, and was sentenced by the court to five years on three child molestation counts, eight years on two other child molestation counts, twenty years for each first-degree statutory sodomy count, five years for the second-degree statutory sodomy and statutory rape counts, and one year in the county jail on the sexual misconduct counts, all to be served concurrently.
>
> On direct appeal, this court affirmed all of the counts except for count 6, a charge of statutory sodomy in the first degree. State v. Herndon, 224 S.W.3d 97 (Mo. App. 2007). On that count, we concluded that the evidence was insufficient to establish penetration of the victim's vagina by Herndon's penis as necessary to sustain the conviction, but found that the evidence was sufficient to convict him of the lesser-included offense of first-degree child molestation. Id. at 99-100. We accordingly remanded to the circuit court to enter judgment on count 6 on the lesser-included offense.

Respondent's Exhibit M, p. 2 (footnote omitted).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc), cert. denied, 469 U.S. 842 (1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because

---

[1] In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

2

petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

**GROUND ONE**

In Ground One, petitioner contends that the trial court erred in denying his motion for a new trial on the ground that jurors made personal or business telephone calls during deliberations. Doc. No. 1, p. 6. Furthermore, petitioner claims that one juror called a discharged alternate juror from the bathroom and discussed the ongoing deliberations. Doc. No. 1, p. 7. The Missouri Court of Appeals, Western District, denied Ground One as follows:

> Herndon also contends that the circuit court erred in denying his motion for new trial and in entering its judgment of conviction because jurors engaged in misconduct and were subjected to outside influences during deliberations. In particular, the evidence established that during deliberations some jurors used their cellular telephones to make personal or business calls and that one juror spoke to an alternate juror, who, although not participating in the jury's deliberation, expressed her opinion that Herndon was innocent.
>
> "[T]he primary if not exclusive purpose of jury privacy and secrecy is to protect the jury's deliberations from improper influence." U.S. v. Olano, 507 U.S. 725, 737–38, 113 S. Ct. 1770, 123 L.Ed.2d 508 (1993). "'Private communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear.'" State v. Quinn, 405 S.W.2d 895, 896 (Mo.1966) (quoting Mattox v. U.S., 146 U.S. 140, 150, 13 S. Ct. 50, 36 L.Ed. 917 (1892)).
>
> The courts presume prejudice when a non-juror has unauthorized communication with jurors. State v. Babb, 680 S.W.2d 150, 152 (Mo. banc 1984). When the improper communication intrudes on the jury's deliberations, the state can avoid a new trial only by establishing that the defendant was not prejudiced by the communication. State v. Hayes, 637 S.W.2d 33, 38 (Mo. App. 1982); State v. White, 138 S.W.3d 783, 786 (Mo. App. 2004). In the face of prima facie evidence of improper communication between jurors and third persons, the state's burden is to show that the communication did not influence the jurors. Quinn, 405 S.W.2d at 896; White, 138 S.W.3d at 786.
>
> The circuit court may grant a new trial for juror misconduct when such misconduct tends to prevent "a fair and due consideration of the case [.]" Section §

3

547.020(2), RSMo 2000. The circuit court has broad discretion in determining whether or not the state has met its burden of establishing that the communication was harmless. State v. Klaus, 730 S.W.2d 571, 580 (Mo. App. 1987). Our standard in reviewing the circuit court's ruling is an abuse of discretion standard. State v. Carr, 610 S.W.2d 296, 300 (Mo. App. 1980). The circuit court abuses its discretion when its ruling "is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." State v. Rutter, 93 S.W.3d 714, 729 (Mo. banc 2002), cert. denied, 540 U.S. 812, 124 S. Ct. 61, 157 L.Ed.2d 26 (2003).

In seeking to rebut the presumption of prejudice, the state presented the testimony of all 12 jurors and the two alternates at the hearing on Herndon's motion for new trial. Juror Carmen Lopez–Palacio testified that she used her cellular telephone during deliberations to telephone a member of her family to inform him or her that the jury "would be [deliberating] longer." She also said that Bobbi Andujar, an alternate juror, called her during deliberations to ask what the jury was doing. Lopez–Palacio responded that she could not discuss anything with her. According to Lopez–Palacio, Andujar replied that she wished the jury "luck" but opined that Herndon was not guilty and that she did not believe the evidence regarding an incident involving the victim's using a vibrator on Herndon. Lopez–Palacio said that Andujar told her that the victim appeared to be lying about the vibrator because Herndon had testified that he had hemorrhoids and the victim never mentioned anything about using a lubricant when she testified that Herndon had her stick a vibrator in his anus. Lopez–Palacio said that she did not share Andujar's conversation with anyone on the jury, but she acknowledged that, because her cellular phone was loud, anyone sitting next to her could have heard both sides of the conversation. Lopez Palacio said that her conversation with Andujar did not influence her decision as a juror in any way. She said that she was not aware of any other communications that any other juror had with any other person during deliberations.

Andujar testified that, about an hour after the jury began deliberations, she telephoned and left a message on Lopez–Palacio's cellular telephone because she assumed that the jury would have been finished with its verdict by then. Andujar left a message telling Lopez–Palacio to telephone her when the jury had finished. Andujar said that about 45 minutes later, Lopez–Palacio telephoned her. According to Andujar, Lopez–Palacio said that she was in the bathroom and that she did not know whether or not she was supposed to be using her telephone. Andujar said that Lopez–Palacio telephoned her to let her know "how it was going" and to let her know that the jury was split "50–50." Andujar said that she asked Lopez–Palacio whether or not they were considering the evidence and that Lopez–Palacio said they were going over everything. Andujar said that she told Lopez–Palacio that there was quite a bit of reasonable doubt and that the victim appeared to be lying about certain things, particularly the vibrator incident. Andujar said that she told Lopez–Palacio

4

that she would let her get back to what she was doing but admonished her to "please look at all the evidence" because "this is somebody's life we're talking about." Andujar said that she expressed surprise by the jury's verdict to Lopez–Palacio when Lopez–Palacio called that night after the jury had reached a verdict.

Juror Alversia Pettigrew testified that she used her cellular telephone during deliberations to telephone her son to tell him that she was going to be late. She said that other jurors also used their cellular telephones to call about their children. Pettigrew recalled that Lopez–Palacio received a phone call from an alternate juror and that Lopez–Palacio either told her or she overheard that the alternate was upset because she wanted to deliberate and that the alternate was in favor of a not guilty verdict. Pettigrew said that she did not know whether any of the other jurors were aware of this phone call and that she knew about it only because she sat next to Lopez–Palacio during the call. According to Pettigrew, she did not believe that this communication had any effect on her or any of the other jurors in their deliberations. She also said that the alternate juror's opinion did not influence her deliberations.

The remaining jurors said that they were unaware that any other juror had had communications about the case with anyone outside the jury during deliberations. Although several jurors said that they either used their cellular telephones or saw other jurors using cellular telephones, none of them was aware of any juror using their cellular telephone to discuss the case with anyone outside the deliberation room. All of the other jurors' telephone calls did not pertain to Herndon's case. All of the jurors, including Lopez–Palacio and Pettigrew, testified that their deliberations were not influenced by anyone outside the jury.

Although Herndon was presumptively prejudiced by Andujar's communication with a juror and by the numerous cellular telephone calls made by many of the jurors during jury deliberation, the evidence established that the jury's deliberation was not affected by these calls. The state established that these communications did not influence the jury's verdict.

Herndon asserts, however, that the circuit court erred by deferring to the jurors' testimonies concerning the effect that the misconduct had on their own subjective deliberative process. "The general rule in Missouri is that a juror's testimony about jury misconduct allegedly affecting deliberations may not be used to impeach the jury's verdict." Travis v. Stone, 66 S.W.3d 1, 4 (Mo. banc 2002). The testimony from the jurors in this case, however, was not being used to impeach the verdict. Further, once juror misconduct has been alleged, the circuit court may take evidence from jurors to prove that the verdict was not improperly influenced by any alleged jury misconduct. White, 138 S.W.3d at 788; State v. Scrivner, 676 S.W.2d 12, 14 (Mo. App. 1984); Hayes, 637 S.W.2d at 38. Indeed, in 1874, the Supreme Court declared:

5

> The rule is perfectly settled[ ] that jurors speak through their verdict, and they cannot be allowed to violate the secrets of the jury room[ ] and tell of any partiality or misconduct that transpired there[ ] nor speak of the motives which induced or operated to produce the verdict. But they may testify in support of their verdict, that no disturbing influence was brought to bear upon them, and that they were not interfered or tampered with.
>
> State v. Underwood, 57 Mo. 40, 52 (1874). Consistent with Underwood, the jurors in this case testified in support of their verdict and stated that they were not influenced by a non-juror.
>
> Although case law suggests that "little weight [should] be given to the offending juror's assessment of the effect of [the misconduct,]" Travis, 66 S.W.3d at 4, the verdict entered in this case establishes that the third party contact did not influence the jurors. Had Andujar's conversation with Lopez–Palacio influenced the jury, we can safely assume that the jury would have entered a verdict of not guilty. The unanimous guilty verdict refutes any contention that Andujar's conversation with Lopez–Palacio influenced the jurors during deliberations. The circuit court did not abuse its discretion in refusing to grant the new trial motion for jury misconduct.

Herndon, 224 S.W.3d at 100-103; Respondent's Exhibit G, pp. 4-9 (footnotes omitted).

The United States Supreme Court has held that "any private communication during a trial, directly or indirectly, with a juror about the matter pending before the jury is deemed presumptively prejudicial and the burden is upon the government to show that the contact was harmless." Remmer v. United States, 347 U.S. 227, 229 (1954). The Eighth Circuit "is not convinced, however, that Remmer established the rule that any extrajudicial communication with a juror is presumed to deprive a criminal defendant of due process under the Fourteenth Amendment." Boykin v. Leapley, 28 F.3d 788, 790 (8th Cir. 1994) (assuming, without deciding, that a presumption of prejudice applied and finding that petitioner was not entitled to relief). Furthermore, "the presumption of prejudice *does not apply* unless the extrinsic contact relates to 'factual evidence not developed at trial.'" Atwood v. Mapes, 325 F. Supp. 2d 950, 970 (N.D. Iowa 2004) (emphasis in original) (quoting United States v. Blumeyer, 62 F.3d 1013, 1016 (8th Cir. 1995)), aff'd, 142 Fed. Appx. 961

6

(8th Cir. 2005).

Even if a presumption of prejudice applies in this case, the Missouri Court of Appeals held that the state overcame the presumption because all of the jurors stated that they were not influenced by the various telephone communications. Furthermore, the unanimous guilty verdict shows that the conversation between Andujar and Lopez-Palacio did not influence the jury, as any improper influence by Andujar would have made the jury more likely to return a not guilty verdict. Because the state court's determinations were not based upon "unreasonable determination[s] of the facts in light of the evidence" or misapplications of "clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2), Ground One will be denied.

## **GROUND TWO**

In Ground Two, petitioner contends that the trial court erred in sua sponte redacting the victim's diary and refusing to allow the jury to view the entire diary. Doc. No. 1, pp. 11-13. The Missouri Court of Appeals, Western District, denied Ground Two as follows:

> In his final point, Herndon contends that the circuit court erred by denying his motion for new trial and entering its judgment of conviction because the circuit court wrongfully refused to allow the victim's diary to be sent in its entirety to the jury during deliberations. Herndon asserts that the entire diary was relevant and critical to rebut evidence that (1) Herndon had ripped pages out of the diary, (2) Herndon required the victim to write specific information in the diary, and (3) the victim would not write personal information in the diary because Herndon would constantly read the diaries as a means of exercising control over the victim.
>
> Decisions of what exhibits to give a jury during deliberations are within the circuit court's sound discretion. State v. Barnett, 980 S.W.2d 297, 308 (Mo. banc 1998). "An abuse of discretion occurs only when the [circuit] court's decision to exclude an exhibit from the jury room 'was clearly against reason and resulted in an injustice to the defendant.'" Id. (quoting State v. Roberts, 948 S.W.2d 577, 596–97 (Mo. banc 1997), cert. denied, 522 U.S. 1056, 118 S. Ct. 711, 139 L.Ed.2d 652 (1998)).
>
> During deliberations, the jury requested the victim's diary. The circuit court

7

noted that during trial it had said that it would take under advisement whether the entire diary or portions of it should be admitted based on the relevancy of the excerpts. The circuit court determined that some of the excerpts in the diary were "simply not relevant" and that it would not allow the entire diary to be sent to the jury. The court concluded that at trial two statements from the diary—one on January 1, 2002, and the other on January 28, 2002—were relevant. The court said that it would allow the jury to see the January 1 entry and would provide to the jury pages 30 to 37 of the diary, which included the January 28 entry. The circuit court allowed pages 30 to 37 so that the jury would have some context for the victim's writing style and for determining whether she was directed by Herndon to write certain entries. Herndon objected, and the circuit court overruled Herndon's objections and sent only part of the diary to the jury. The jury sent a second request asking for the entire diary, and the circuit court sent a response saying that it was unable to provide the entire diary.

Herndon asserts that the diary was critical to establish that no pages had been torn out of the diary. Although the victim had testified in a deposition that Herndon had directed her to write the January 1 entry and then he ripped the pages out of her diary, she testified at trial that no pages had been torn out of the diary. Hence, the jury's viewing of the entire diary was not critical to establish that no pages had been torn out of the diary because everyone agreed that no pages had been removed from the diary.

Herndon also contends that the jury's viewing of the entire diary was necessary to rebut the evidence that Herndon told the victim what to write in the diary. The victim testified that Herndon required her to write only two entries in the diary—the January 1 entry and the January 28 entry. The circuit court allowed the jury to view these entries. In addition to these entries, the circuit court provided the jury with seven pages from the diary, which included the January 28 entry. The circuit court said that it was providing the jury with these extra pages so that the jury would have an idea about the victim's writing style, syntax, and spelling and so they could make some judgment about whether or not the victim was directed by Herndon to make certain entries. Herndon does not explain why these additional pages were insufficient to allow the jury to make a comparison between the entries that Herndon allegedly forced the victim to write and those that were not forced.

Although Herndon asserts that the circuit court should have allowed the jury to view the entire diary because it would have rebutted the evidence that the victim would not write personal information in the diary because Herndon would constantly read the diaries as a means of exercising control over her, he did not raise this argument to the circuit court. An issue raised for the first time on appeal is not preserved for appellate review. State v. Jones, 979 S.W.2d 171, 186 (Mo. banc 1998), cert. denied, 525 U.S. 1112, 119 S. Ct. 886, 142 L.Ed.2d 785 (1999). Moreover, from the face of the record, we do not discern plain error. See Rule 30.20.

8

> The circuit court, in an exercise of its discretion, allowed the jury to see those portions of the diary that were shown to be relevant. The circuit court, in its discretion, also allowed the jury to see additional entries to allow the jury to have some context for the relevant entries. The circuit court, therefore, did not abuse its discretion.

Herndon, 224 S.W.3d at 103-106; Respondent's Exhibit G, pp. 9-11.

State trial courts are afforded wide discretion with evidentiary rulings. "Questions regarding admissibility of evidence are matters of state law, and they are reviewed in federal habeas inquiries only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process." Rousan v. Roper, 436 F.3d 951, 958 (8th Cir. 2006) (citation and internal quotations omitted), cert. denied, 549 U.S. 835 (2006); see also Bell-Bey v. Roper, 499 F.3d 752, 759 (8th Cir. 2007), cert. denied, 128 S. Ct. 2426 (2008).

"The exclusion [or admission] of [evidence] based on state evidentiary rules results in the denial of due process only if there was an impropriety so egregious that it made the entire proceeding fundamentally unfair." Skillicorn v. Luebbers, 475 F.3d 965, 972 (8th Cir. 2007) (citation omitted), cert. denied sub nom. Skillicorn v. Roper, 552 U.S. 923 (2007). "To meet this burden, a habeas petitioner must show that 'absent the alleged impropriety the verdict probably would have been different.'" Id. (quoting Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995) (rehearing denied)).

Petitioner fails to meet this standard. Petitioner argues that the entire diary was relevant to rebut the allegations of sexual abuse because the diary was void of references to sexual misconduct or animosity towards petitioner and because the victim would have included such passages if she was being sexually abused. Doc. No. 1, pp. 12-13. The jury, however, was able to view the passages that directly contradicted the victim's allegations of sexual abuse as well as additional

9

passages to help the jury determine whether the victim was forced to write those passages. Because petitioner admits that the rest of the diary contained "silly things going on in her life," any additional passages in the diary would not have directly contradicted the allegations of sexual abuse and would only have provided passages similar to those admitted to help the jury compare the victim's writing style. Doc. No. 1, pp. 12-13. Consequently, the record does not evince that the alleged errors were "so conspicuously bad that [they] fatally infected the trial and rendered it fundamentally unfair." Troupe v. Groose, 72 F.3d 75, 76 (8th Cir. 1995) (citing Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995)).

The Missouri Court of Appeals, Western District, found that the trial court did not err in redacting the diary because the jury was provided the passages that were relevant to the victim's allegations of sexual abuse and because the issue of whether petitioner ripped pages out of the diary was not in dispute. Respondent's Exhibit G, pp. 9-11. Because the state court's determinations were not based upon "unreasonable determination[s] of the facts in light of the evidence" or misapplications of "clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2), and because the admission of the evidence at issue did not amount to a denial of due process, Ground Two will be denied.

## GROUND THREE

In Ground Three, petitioner asserts a claim of ineffective assistance of counsel in that counsel failed to submit an instruction to the jury concerning the lesser-included offense of second-degree statutory sodomy on three of the charges against him. Doc. No. 1, pp. 15-16. The Missouri Court of Appeals, Western District, denied Ground Three as follows:

> Herndon asserts two Points Relied On. Both argue that his counsel was ineffective for failing to request lesser-included offense instructions for the first-

10

degree child molestation counts (Point I; counts 1, 2, 3, 8, and 9), and for the first-degree statutory sodomy counts (Point II; counts 6, 7, 10, 11). Because Herndon's claims under both Points fail for the same reasons, we address them together.

The standard for achieving post-conviction relief on a claim of ineffective assistance of counsel is well known:

> To be entitled to post-conviction relief for ineffective assistance of counsel, the movant must satisfy a two-prong test. First, the movant must show that his counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would exercise in a similar situation. Second, the movant must show that trial counsel's failure prejudiced the defendant. Both of these prongs must be shown by a preponderance of the evidence in order to prove ineffective assistance of counsel.

Zink, 278 S.W.3d at 175 (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).

Herndon argues that his attorney erred in failing to request lesser-included offense instructions, to which he believes he was entitled under § 556.046, RSMo. The State does not dispute that the second-degree offenses on which Herndon claims he was entitled to instructions are lesser-included offenses of the first-degree offenses for which he was convicted. Section 556.046 makes clear, however, that a defendant is not automatically entitled to a lesser-included offense instruction merely because a lesser-included offense exists. Instead, the statute specifies that

> 2. The court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense . . . .
>
> 3. The court shall be obligated to instruct the jury with respect to a particular included offense only if there is a basis in the evidence for acquitting the defendant of the immediately higher included offense and there is a basis in the evidence for convicting the defendant of that particular included offense.

§ 556.046, RSMo.

Here, the motion court found that there was no basis for giving the lesser-included offense instructions on which Herndon's ineffective assistance claims are based, because the only difference between the first- and second-degree offenses is the victim's age, which was uncontested at trial. . . .

11

. . . .

This conclusion is not clearly erroneous.

. . . .

    J.M. testified that she was born on April 13, 1989, and her testimony as to her birthdate was not disputed by other evidence. (Indeed, in his testimony at the post-conviction evidentiary hearing, Herndon's trial counsel acknowledged that J.M.'s birthdate and age were uncontested at trial. PCR Tr. 48-49.) As noted above, counts 1-3 were alleged to have occurred before April 13, 2001, when J.M. turned twelve, while counts 6-11 were alleged to have occurred before April 13, 2003, when she turned fourteen. Accordingly, given the date ranges specified in the charging document, counts 1-3 all occurred, if they occurred at all, before J.M. turned twelve; counts 6-11 all occurred, if they occurred at all, before she turned fourteen. Therefore, as long as the jury found that the other elements of the crimes of child molestation and statutory sodomy were satisfied, the only evidence before them on the issue showed that J.M. was the victim of first-, and not merely second-, degree statutory sodomy and child molestation.

. . . given that J.M's age was undisputed, and that her undisputed age plainly falls within the necessary parameters of the greater offenses for which Herndon was convicted, he was not entitled to lesser-included offense instructions, as the motion court correctly found.

    We note that the testimony of Herndon's defense counsel essentially acknowledges that no dispute exists as to the victim's age which could have supported Herndon's acquittal of the first-degree offenses, but conviction of the second-degree offenses:

. . . .

    Even if we were to assume, <u>arguendo</u>, that there was evidence supporting the submission of lesser-included offense instructions, the testimony of Herndon's trial counsel indicates that his failure to seek lesser-included offense instructions was a matter of considered trial strategy, which could not form the basis of a successful post-conviction relief claim. In his testimony during the evidentiary hearing, defense counsel states that his decision not to request lesser-included offense instructions was based on three primary considerations: (1) that the theory of defense was that Herndon had committed none of the acts J.M. alleged, and that lesser-included defense instructions would be in tension with his defense theory; (2) that given his view that the evidence against Herndon was not strong, counsel did not wish to give the jury the option of convicting him of a lesser crime, but instead wanted to "hold

12

their feet to the fire" by leaving the jury with the stark choice between conviction of the greater offenses, and outright acquittal; and (3) that Herndon had expressed the desire to avoid *any* period of imprisonment, and the lesser-included offense instructions would not achieve that objective. PCR Tr. 31-33. Counsel also testified that he discussed this issue, at least briefly with Herndon, but that "it became obvious" that seeking lesser-included offense instructions would be inconsistent with the overarching defense approach. Id. at 32.

While the motion court did not specifically address the trial counsel's stated reasons for failing to seek lesser-included offense instructions, the considerations identified by counsel would generally be considered to support the conclusion that counsel made a reasonable strategic choice which cannot support a claim of ineffective assistance of counsel. . . . . Thus, even if Herndon had established his legal entitlement to lesser-included offense instructions, the record of the evidentiary hearing indicates that counsel's decisions not to request them was a matter of considered, and reasonable, trial strategy.

Respondent's Exhibit M, pp. 3-10.

The issue of whether petitioner was entitled to the lesser-included offense instruction under Mo. Rev. Stat. § 556.046 primarily presents an issue of state law, and a federal court is bound by a state court's interpretation of state law in federal habeas corpus proceedings unless petitioner's convictions violate the United States Constitution or federal law. Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("'federal habeas corpus relief does not lie for errors of state law'"). Furthermore, in Strickland, the Court held that, in order for petitioner successfully to assert a claim for ineffective assistance of trial counsel, petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. Strickland, 466 U.S. at 687-88. This Court, moreover, may not grant habeas relief unless the state appellate court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in Strickland." Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999), cert. denied, 530 U.S. 1265 (2000).

"A court considering a claim of ineffective assistance must apply a 'strong presumption' that

13

counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 131 S. Ct. 770, 787 (2011) (quoting Strickland, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. To satisfy the prejudice prong, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland, 466 U.S. at 694.

The Missouri Court of Appeals, Western District, found that, because the victim's age was not in dispute, petitioner was not entitled to the lesser-included defense instruction under state law. Furthermore, the court found that, even if petitioner was entitled to the lesser-included offense instruction, trial counsel's choice not to have the jury instructed on the lesser-included offense was reasonable trial strategy. Because the state court's determinations were not based upon "unreasonable determination[s] of the facts in light of the evidence" or misapplications of "clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2), and because the admission of the evidence at issue did not amount to a denial of due process, Ground Three will be denied.

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

14

(1) the petition for writ of habeas corpus is denied;

(2) the issuance of a certificate of appealability is denied; and

(3) this case is dismissed with prejudice.

           /s/ Dean Whipple
           DEAN WHIPPLE
           UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: June 6, 2012.